We are now going to move to the fourth case of the morning, case number 18-1915, United States v. Z Investment Properties. Mr. Bond, we will begin with you. May it please the Court, my name is Ted Bond, Jr. I'm representing today the appellants, Z Investment Properties, LLC and Chicago Title Land Trust Company. We are asking the Court today to reverse a decision finding that an IRS lien attached to a piece of property in Mundelein, Illinois and instead determine that that IRS lien is ineffective and unenforceable as and against this particular parcel of real estate. I think a quick summation of the facts might help here to understand why we feel what the District Court did in this case was so unfair. We had a tax debtor by the name of Carol Raines, owned a home in Mundelein, Illinois, and apparently at some time beginning in 2000 either failed to pay income taxes or paid less than what he owed. Mr. Raines lived until 2009, at which time he passed away. From the time he stopped paying in 2000 up until the time of his passing, the IRS did nothing to enforce their lien against his home in Mundelein. In the early part of 2010, the IRS finally records a lien. They misspell Mr. Raines' first name. They leave out one of the letters. His name was Carol with two L's. They left out one of the L's. Later in the year 2010, my client acquires his interest in the real estate from the heirs of the tax debtor. Fast forward seven years later. Seven years after the lien is filed, there's a seven-year statute of limitations to enforce those liens. The IRS finally decides that we had this tax debtor going all the way back to 2000 who hadn't been paying his taxes. Now in the year 2017, for the first time, we're going to try to go after his house. In the meantime, I've got a client who for seven years has owned this property, maintained it, renovated it, paid property taxes, insurance, etc. The threshold issue to be decided in this case is whether my client had constructive knowledge of the IRS lien at the time that they acquired their interest in 2010. Our position is there could be an argument made that there was actual knowledge, but there's no evidence in the record to submit that. So the question is one of constructive knowledge. And it might be easy in this case to say, well, come on, it's just a typo. They left off one letter L, and it's just a first name. It's not a last name. It shouldn't matter. And our argument is that it does matter. Spelling is extremely important when it comes to recording of- Handwriting, too. I'm sorry? Handwriting, too. Yes, I agree. I agree. Unfortunately, there's no handwriting here that we can criticize. But I can criticize the spelling and the name, and I believe very strenuously that it's an important fact. And it's important because where this property is located, which is in Lake County, Illinois, the County Recorder of Deeds Office maintains a grantor-grantee index, which by definition means that the land records are kept by party name, not by parcel. So when somebody is ascertaining who has an interest in a piece of real estate, they search based on names, not based on property description, PIN, or property address. So in this case, the fact that it was misspelled would not give anybody constructive notice of a lien against the owner of this property who acquired the title with two L's in his name. That's true if you were searching under the name is misspelled, right? But what do you do about a more simplified search that's just looking at the last name and first initial that, through a couple of steps, would lead you to the lien? So the question is, does that more simplified search, as you're on a question, does that need to be done or is that standard practice? Or more importantly, does that magically put this lien within the chain of title? And one of the problems that we have in this case is that the evidence that was submitted by the United States says, well, we did a search in 2017 and here's what we found. There was a Soundex index and we found some names that were kind of similar, and it kind of indicated to us that maybe this Carol Raines is the same Carol Raines that had some other liens against her. But what they didn't submit to the court, there's zero evidence, is at the time that my client acquired their interest in 2010, what did the land record show? How could you do a search back in 2010? Was the same computer system that was available after this lawsuit was filed available in 2010? We don't know that. All we know is what was recorded in 2010 and that the name was misspelled. I'm going to cite to a court case, which I pointed out in our brief, a state court case, which I think is directly on point here. And even though it's a state court case, I think it's absolutely positive here and should apply. And that's Fleet Mortgage versus U.S. Conglomerate. It's a first district decision from 1988. And the issue in the case was whether an IRS lien with a misspelled last name, one letter again, the tax debtor in that case, her last name was Bradley, B-R-A-D-L-E-Y. The IRS lien spelled it B-R-A-D-L-Y. It missed the E. And the question in that case was whether a mortgagee who acquired their interest in the property and placed their lien on the property after the IRS had priority over the IRS or if the IRS held the first lien on the property in that foreclosure action. In your summary judgment brief in the district court, did you all argue that the computer system as it stood in its search capability as of 2017 was not the same capability that existed in 2010 or 2011? We did after the issue was brought up. So one of the unusual things that kind of occurred in this case is we agreed early on not to do any discovery, this was between the parties, and the court order said that both parties were going to file cross motions for summary judgment and ask the district court to determine this case without doing any discovery. And what happened is even though we filed our summary judgment motion first, they were put on parallel briefing schedules. And when the government filed their brief on their cross motion for summary judgment, for the very first time they included evidence relating to what the state of the recorder of deeds public record system was in 2017. We had no prior knowledge of that evidence that was going to be used. It was brought up for the first time in their cross motion for summary judgment. Now we had already agreed we weren't going to do any discovery at that point. So as a result, we were going to do this solely through the briefs. We submitted rebuttal evidence to show that that was not a reliable method of doing a search, that the spelling of a name is important, and also argued that the system that they're using was the 2017 system, not the 2010 system. Yeah, I know you argued that, but did you make a counter proffer or say, look, in light of them pointing out what the system is in 17, I need to have a deposition or I need to do something to be able to test what it was in 10? I can affirmatively state we did not, Your Honor. And the reason for that was because we had already informed the district court that we didn't want to do any discovery in the case, that we were hoping to resolve this case with basically a minimum amount of expense and going directly to summary judgment. If this court is not willing to just outright reverse the district court's decision and turn around and invalidate the lien in our favor, I would ask that the court at least potentially consider remanding it back to do discovery specifically for that purpose. Because of the way the government handled their briefing, an issue came up that we certainly didn't anticipate was going to be an issue. We thought the argument was simply going to be, let's look at all these cases. I see I'm running out of time, and I'll use a little bit of it if I can, please. But we were just looking at all these cases involving misspellings, and we wanted to argue those to the court. We didn't want to get into a fact dispute, and unfortunately that's what wound up happening. Thank you. Thank you. Thank you for your time. Thank you. We'll next hear from Mr. Rennie. Good morning, Your Honors. Congress has accorded federal tax liens a special status under the law to ensure the prompt collection of revenue, and because the government, unlike most private parties, is an involuntary creditor in the sense that it does not choose to become involved in a financial relationship with a delinquent taxpayer. Because of that, government notices of federal tax liens are not required to identify a taxpayer with absolute precision. Substantial compliance with the statutory and regulatory requirements is considered sufficient to put a subsequent purchaser, such as the appellants, on constructive notice. And there are good reasons for that to be the law. Throughout the litigation, the appellants have assumed that this was an error by the IRS, a typo maybe in entering the notice of the federal tax lien. However, there are a number of different ways that that type of error can come about. In addition to it being an error by somebody inputting the name at the IRS, it could be a tax preparer who makes that kind of mistake. It could be a handwriting issue where a taxpayer fills out their 1040 by hand and the IRS then misreads it. And the main reason why absolute precision is not required is because we don't want to have situations where it's opened up to manipulation by a taxpayer who is hoping to avoid enforcement of a tax lien in this type of case and engages in gamesmanship figures. Well, maybe if I file my tax return under some variation of my name and I own property under another variation of my name, it won't catch up with me. So that's another key reason why absolute precision is not the standard under the law of federal tax liens. And moreover, in addition to the substantial compliance standard, there is no requirement that a tax lien describe the property to which it attaches. And that's because it attaches to all currently held and after-acquired property. And it would be incredibly burdensome for the IRS to have to go figure out every time they file a notice of federal tax lien, what property does this taxpayer own, and then update it every single time that they acquire a new property under a slight variation of their name. And really the only way that the appellants can win in this case is if there is a absolute precision requirement, if there is strict compliance as they discuss it. And whatever the law might be under state law, that is simply not the law for federal tax liens. And the weight of the authority here supports the conclusion that a notice omitting the last letter in a taxpayer's first name would still provide constructive notice. And that would really be the case regardless of what type of filing system we had here. The evidence shows that as of 2017, there was an electronic searching system. But even if we were talking about a paper index here, this variation on the taxpayer's name would have been right next to the correct name. It would have been virtually impossible to miss. The only way that you could have missed it is if you were only looking for one specific variation of the taxpayer's name. And that's not the law here. Moreover, as it was pointed out earlier, there were variations on the taxpayer's name in the chain of title here, which would have put any searcher on notice that number one, some folks had misspelled the taxpayer's first name and that he sometimes went by his initials, which would have been enough to prompt one to look at last name first, which is what you would generally do in a grant or a grantee index, and then the first initial, which would have also very clearly revealed the notice of federal tax lien here. Additionally, the evidence in the record does show that that very much comes up if you search by the first initial here. And none of that was disputed below. The IRS also had performed a search before it filed this case, which revealed the lien. Now, it's almost unnecessary to reach the issue of whether the district court abuses discretion by excluding the expert opinions in lieu of conclusions of the William Bond Declaration. And the gist of what they're arguing here is not something that they raised until the motion for reconsideration, which is that it was filed in response to the information submitted by the government. The parties had agreed that expert discovery would not be necessary, that the case could be resolved on summary judgment. And they never disclosed Mr. Bond as an expert witness. They never submitted a written report. And because of that, the district court found that it was prejudicial and that they were attempting to slip in an undisclosed expert at the end of summary judgment briefing. And the gist of their argument, even if you look at it, is that the Paralegals Declaration here, which was essentially authenticating the information in the county records, was an expert report. But that's not what it did. She didn't opine on the chain of title. She did not opine on how a proper search should be done. What she simply did was that I went to a publicly accessible website, which is something that the district court properly took judicial notice of. I input these names, and here are the results. She didn't opine in any way on those results. She did not. None of this required any scientific, technical, or specialized knowledge. It is something that an untrained layperson could have easily reproduced. It's akin to an attorney's affidavit authenticating documents in discovery. Do we know, Mr. Rennie, I understand that for cost purposes and efficiency purposes, the parties made this determination to have cross motions for summary judgment, try to keep costs down, get the case resolved as expeditiously as possible. Was there ever any discussion with Judge Blakey, fact issues are coming up, we need to take this off of a summary judgment track, we need to put this on a discovery track, or once the summary judgment track was decided, did the parties adhere to that? Your Honor, there is nothing I've seen in the record that suggests that there was that type of discussion. One of the things that the appellants could have done if they felt that was the case was requested a continuance under Rule 56D. They didn't do that. The contemplation all along was that this was going to be resolved on summary judgment, and there wasn't any variation on that until they lost, and then they came up with these new arguments on their motion for reconsideration. When we run out of questions, you run out of answers. You can quit, you know. Yes. If the Court doesn't have any other questions, we'll rest on our briefs. Thank you. Mr. Bond, same question to you on that. Any discussions with Judge Blakey about taking this off the summary judgment track and putting it on to a discovery track? That never did occur, Your Honor. It was basically we just filed the briefs, we learned what each party was presenting based upon the briefs, and nobody went back. And, again, I think that was because we had this agreement that that was the intention of how we were going to resolve the case. May continue. The final point I think I want to raise to the Court is, and counsel did bring this up, we are arguing for a strict rather than substantial compliance standard here. An IRS lien has an enormous amount of power. As you can see in this particular case, my client acquired an interest in this property, and seven years later, for the first time, this bug comes up, this problem comes up. They could lose their entire interest in this property seven years later. Given those circumstances, I don't think it's too much to ask that the IRS spell the names exactly. I do know that there is a regulation out there that says when they're recording liens and they want it to attach to a piece of real estate, they don't have to put a legal description of the property or a permanent index number. Well, that's standard practice when recording deeds, mortgages, and other types of liens. Even though the regulation says they don't have to, there's nothing that says they can't. And if they really want those liens to attach, I think spelling the names right and including a complete property description is the only fair way to protect third parties like my client from the severe consequences of the attachment. Thank you, Mr. Bond. Thank you, Mr. Redding. The case will be taken under advisement.